


AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of        )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )
White iPhone                )
2024250400166702-0001    )
("Target Device 2")         )

Case No.  **25mj0039**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Nicole Caughey, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:  September 30, 2024

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Steve B. Chu, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> White iPhone
> Seizure No. 2024250400166702-0001
> (**"Target Device** 2**"**)

**Target Device 2** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 13, 2024 up to and including September 27, 2024:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

**AFFIDAVIT**

I, Special Agent Nicole Caughey, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search the following electronic devices, (Collectively, the "**Target Devices**"):

> Black iPhone
>
> Seizure No. 2024250400166701-0004
>
> ("**Target Device 1**")
>
> White iPhone
>
> Seizure No. 2024250400166702-0001
>
> ("**Target Device 2**")

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Jesus PEREZ Jimenez ("D1") and Samantha ESTRADA Salazar ("D2") ("The Defendants") for importing approximately 38.06 kilograms (83.73 pounds) of Methamphetamine from Mexico into the United States. The **Target Devices** are currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

# BACKGROUND

3.      I have been employed as a Special Agent with Homeland Security Investigations (HSI) since April of 2007. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California.  I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.      During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.      I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry. And Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States.  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation.  When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity.  When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within

the United States.

6.    Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.     On September 27, 2024, at approximately 11:35 AM, Jesus PEREZ, ("PEREZ"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry along with passenger, Samantha ESTRADA ("ESTRADA"), a United States citizen. PEREZ and ESTRADA attempted entry through vehicle lane #24. PEREZ is the registered owner of the 2011 red Hyundai Sonata ("the vehicle") bearing California license plates.

8.     The primary Customs and Border Protection Officer (CBPO) noticed a computer-generated referral for PEREZ. PEREZ stated that he was going to San Ysidro. The CBPO received two negative Customs declarations from PEREZ. The CBPO then asked PEREZ if anyone had asked him to bring anything into the United States or Mexico and if anyone had driven his vehicle besides him in the last three days. PEREZ responded "no" to each question. The CBPO then sent PEREZ, ESTRADA, and the vehicle to secondary for a more intensive inspection.

9.     A CBPO operating the Z-Portal X-Ray machine detected anomalies in both sides of the rear quarter panels, rear bumper and the backseat of the vehicle.

10.    A Human and Narcotic Detection Dog ("HNDD") was requested to screen the vehicle. The HNDD alerted to the side quarter panels of the vehicle.

11.    Further inspection of the vehicle resulted in the discovery of 80 packages concealed in the left and right rear quarter panels, rear bumper, and rear passenger seat with a total approximate weight of 38.06 kgs (83.73 lbs.).  A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

12.    PEREZ was placed under arrest at approximately 5:13 PM.

13.    During a post-Miranda interview, PEREZ denied knowledge that the narcotics were in the vehicle. According to PEREZ the vehicle he was driving belonged

to a Hispanic male named Ramiro, a 70-year-old man he just met that owns Casa De Cambio's in Tijuana, MX. PEREZ was going to pick up money for Ramiro. PEREZ took an Uber with ESTRADA from his residence in Tijuana, MX to pick up the vehicle.

14.    ESTRADA was placed under arrest at approximately 4:34 PM.

15.    During a post-Miranda interview, ESTRADA denied knowledge that the narcotics were in the vehicle. ESTRADA stated the vehicle was parked at PEREZ's residence on the street in front of his house ESTRADA stated they drove from PEREZ's residence at 9:30 AM and got in line to cross the border at 10:00 AM.

16.    PEREZ and ESTRADA were arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

17.    The **Target Devices** were found and seized by a Customs and Border Protection Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and inventory all the property seized from the Defendants and the vehicle. During the interview, Defendant PEREZ was shown **Target Device 1** and identified **Target Device 1** as belonging to him.  Defendant ESTRADA was shown **Target Device 2** and identified **Target Device 2** as belonging to her.

18.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**.  In light of the above facts and my experience and training, there is probable cause to believe that the Defendants were using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their

arrest to determine the whereabouts of the narcotics.

19.    Based upon my training and experience, it is also not unusual for individuals, such as the Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on September 13, 2024 up to and including September 27, 2024.

## METHODOLOGY

20.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21.     Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

23.     Post-Miranda, Defendant ESTRADA provided agents with written consent to search **Target Device 2**. Agents conducted a cursory search of the **Target Device 2**. Agents are requesting the warrant to obtain a forensic examination of the phone.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

1

## CONCLUSION

2       24.     Based on the facts and information set forth above, I submit there is probable

3   cause to believe that a search of the **Target Devices** will yield evidence of the Defendants'

4   violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I

5   request that the Court issue a warrant authorizing law enforcement to search the items

6   described in Attachments A-1 and A-2, and seize the items listed in Attachment B using

7   the above-described methodology.

8

9

10   I swear the foregoing is true and correct to the best of my knowledge and belief.

11

12                                   Special Agent Nicole Caughey

13                                   Homeland Security Investigations

14   Sworn and attested to under oath by telephone, in accordance with Federal Rule of
15   Criminal Procedure 4.1, this 30th day of September 2024.

16

17

18   Hon. Steve B. Chu
     United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28